## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| NICK FISHER,<br><br>    Plaintiff, individually and on behalf of a nationwide class of similarly situated individuals,<br><br>        v.<br><br>ALARM.COM, HOLDINGS, INC., NORTEK SECURITY & CONTROL, LLC, JOHN DOE ENTITIES, 1-10,<br><br>    Defendants. | Case no. 1:18-cv-02299<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff, NICK FISHER ("Plaintiff"), by and through his attorney, James C. Vlahakis of Sulaiman Law Group, Ltd., and pursuant to FRCP 23, brings this Class Action Complaint for damages, declaratory relief and injunctive relief, against Defendants ALARM.COM, HOLDINGS, INC., NORTEK SECURITY & CONTROL, LLC, JOHN DOE ENTITIES, 1-10, and in support states the following:

**I.    INTRODUCTION**

1.    Plaintiff has filed suit against Defendants pursuant to Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. (the "TCPA") and the Telemarketing And Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6101, et seq. (the "TCFAPA") because he was called by one or more of the Defendants for telemarketing without his consent and the telemarketing calls utilized prerecorded messages and were placed with equipment that is prohibited by the TCPA.  The telemarketing calls also violated various prohibition and regulations set forth by the TCPA and the TCFAPA.

2.     Plaintiff brings this civil action as Class Action Complaint on behalf of himself, and a nationwide class of similarly situated individuals, pursuant to Federal Rule of Civil Procedure ("FRCP") 23(a), 23(b)(2) and 23(b)(3) against Defendants.

## II.    SUMMARY OF VIOLATIONS

3.     One or more of the Defendants called or caused Plaintiff's cellular telephone to be repeatedly called for the purpose of encouraging him to purchase home alarm services. Defendants' conduct violated the TCPA and TCFAPA because the telemarketing calls that they placed or caused to be placed were placed without Plaintiff's consent.

4.     Additionally, the telemarketing calls utilized prerecorded messages and were placed with equipment that is prohibited by the TCPA. The calls also violated various provisions of the TCFAPA.

5.     The telemarketing messages promoted Defendant Alarm.com, Holdings, Inc. ("Alarm.com"), Defendant Nortek Security & Control, LLC ("Nortek") and possibly as yet unknown John Doe Defendant Entities.

6.     As set forth below, one or more of the Defendants violated the TCPA and/or the TCFAPA because:

a. one or more of the Defendants called or caused Plaintiff's cellular telephone to be called for the purpose of telemarketing a home security service to Plaintiff where one or more of the calls were placed through the use of automated telephone dialing technology or a predictive dialer;

b. one or more of the Defendants called or caused Plaintiff's cellular telephone to be called where one or more of the calls utilized a prerecorded or artificial voice message and the Defendant or Defendants did not have Plaintiff's prior express permission to do so;

c. one or more of the Defendants called or caused Plaintiff's cellular telephone to be called for the purpose of telemarketing a home security service to Plaintiff where one or more of the calls utilized an interactive system which utilized prerecorded or artificial voice message technology to suggest that Plaintiff was speaking with a live person, when in reality Plaintiff was speaking with computer technology;

d. one or more of the Defendants called or caused Plaintiff's cellular telephone to be called in a manner to falsely suggest that the person or entity calling Plaintiff was associated with a local area code;

e. one or more of the Defendants called or caused Plaintiff to be called for the purpose of telemarketing a home security service where one or more of the calls utilized a prerecorded message the Defendant or Defendants did not have Plaintiff's prior express written permission to do so to call Plaintiff with a prerecorded message;

f. one or more of the Defendants called or caused Plaintiff to be called for the purpose of telemarketing a home security service where one or more of the Defendants denied, interfered with, and failed to honor Plaintiff's right to be placed on a "do not call" list/registry;

g. one or more of the Defendants called or caused Plaintiff to be called for the purpose of telemarketing a home security service and the Defendant or Defendants required Plaintiff to listen to a sales pitch before accepting Plaintiff's "do not call" request;

h. one or more of the Defendants called or caused Plaintiff to be called for the purpose of telemarketing a home security service and the Defendant or Defendants harassed Plaintiff for making a "do not call" request;

i. one or more of the Defendants called or caused Plaintiff to be called for the purpose of telemarketing a home security service and the Defendant or Defendants hung up on Plaintiff after he made a "do not call" request;

j. one or more of the Defendants called or caused Plaintiff to be called for the purpose of telemarketing a home security service and the Defendant or Defendants caused Plaintiff to ask the person calling him to identify the seller during a call where Plaintiff asked to be placed on a "do not call" list;

k. one or more of the Defendants called or caused Plaintiff's cellular telephone to be called with automated dialing technology where the calls failed to include regulatory disclosures that are required to be used in telemarketing calls;

l. one or more of the Defendants called or caused Plaintiff's cellular telephone to be called for telemarketing purposes despite Plaintiff telling them to place him on their "do-not-call" list(s);

m. one or more of the Defendants called or caused Plaintiff's cellular telephone to be called for telemarketing purposes and one or more of the calls utilized a prerecorded message and the message failed to include an automated interactive voice and/or keypress-activated opt-out mechanism to assert a "do not call" request at any time during the message;

n. one or more of the Defendants called or caused Plaintiff's cellular telephone to be called with automated dialing technology for

telemarketing purposes outside of the hours allowed for telemarketing calls;

o. one or one or more of the Defendants called or caused Plaintiff's cellular telephone to be called for telemarketing purposes without identify the seller of the services being offered; and

p. one or one or more of the Defendants called or caused Plaintiff's cellular telephone to be called for telemarketing purposes and failed to disclose truthfully, promptly, and in a clear and conspicuous manner the identify the seller of the product being offered.

## III.    PARTIES, JURISDICTION AND VENUE

7.    Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

8.    Defendant Alarm.com is a publically traded company, incorporated under Delaware law, and headquartered in Tysons, Virginia.

9.    Alarm.com's website describes itself as follows:

Alarm.com is the leading cloud-based platform for the connected home. Millions of home and business owners depend on our technology to intelligently secure their properties and automate a broad array of connected devices through our single, intuitive user interface. Interactive security, intelligent automation, video monitoring and energy management solutions are delivered exclusively through an established network of trusted service providers.

10.    Alarm.com, at all times mentioned herein, conducted substantial business in this district.

11.    On information and belief, Alarm.com, at all times mentioned herein, conducted substantial business in every state of the United States.

12.    Alarm.com, and at all times mentioned herein was, a corporation and is therefore a "person," as defined by 47 U.S.C. § 153 (39).

13.    Alarm.com's Annual Report on Form 10-K for the fiscal year ended December 31, 2016, recognized that Alarm.com operates in a regulated industry, subject to regulations promulgated by the Federal Trade Commission, including, but

not limited prohibitions against unsolicited automated telephone calls and the use of prerecorded or artificial voice messages to both residential and wireless telephones.

14. Alarm.com's Annual Report on Form 10-K for the fiscal year ended December 31, 2016, includes the following statement:

> ***Our business operates in a regulated industry.***
>
> Our business, operations and service provider partners are subject to various U.S. federal, state and local consumer protection laws, licensing regulation and other laws and regulations, and, to a lesser extent, similar Canadian laws and regulations. Our advertising and sales practices and that of our service provider partner network are subject to regulation by the U.S. Federal Trade Commission, or the FTC, in addition to state consumer protection laws. The FTC and the Federal Communications Commission have issued regulations that place restrictions on, among other things, unsolicited automated telephone calls to residential and wireless telephone subscribers by means of automatic telephone dialing systems and the use of prerecorded or artificial voice messages.

http://investors.alarm.com/static-files/acb4bbca-ea99-43e2-bdbf-851f15c23da6 at pp. 28 (filed on March 16, 2017).

15. Alarm.com's Annual Report on Form 10-K for the fiscal year ended December 31, 2016, recognized it utilizes operations and service provider partners in its business operations.

16. Alarm.com's Annual Report on Form 10-K for the fiscal year ended December 31, 2016, recognized that it can be subject to vicarious liability for its actions in violation of various laws and regulations, as well as the actions of its operations and service provider partners.

17. Alarm.com's Annual Report on Form 10-K for the fiscal year ended December 31, 2016, includes the following statement with regard to so-called "provider partners":

> If our service provider partners were to take actions in violation of these regulations, such as telemarketing to individuals on the "Do Not Call" registry, we could be subject to fines, penalties, private actions or enforcement actions by government regulators. Although we have

taken steps to insulate ourselves from any such wrongful conduct by our service provider partners, and to require our service provider partners to comply with these laws and regulations, no assurance can be given that we will not be exposed to liability as result of our service provider partners' conduct. Further, to the extent that any changes in law or regulation further restrict the lead generation activity of our service provider partners, these restrictions could result in a material reduction in subscriber acquisition opportunities, reducing the growth prospects of our business and adversely affecting our financial condition and future cash flows.

18. Alarm.com's Annual Report on Form 10-K for the fiscal year ended December 31, 2016, reported certain TCPA related litigation against Alarm.com as follows:

On December 30, 2015, a putative class action lawsuit was filed against us in the U.S. District Court for the Northern District of California, alleging violations of the Telephone Consumer Protection Act, or TCPA. The complaint does not allege that Alarm.com violated the TCPA, but instead seeks to hold us responsible for the marketing activities of our service provider partners under principles of agency and vicarious liability. The complaint seeks monetary damages under the TCPA, injunctive relief, and other relief, including attorney's fees. We answered the complaint on February 26, 2016. On March 7, 2017, plaintiffs filed their motion for class certification. Our response is due March 28, 2017. Discovery has commenced, and the matter remains pending in the U.S. District Court for the Northern District of California.

On December 30, 2015, a putative class action lawsuit was filed against us in the U.S. District Court for the Northern District of California, alleging violations of the Telephone Consumer Protection Act, or TCPA. The complaint does not allege that Alarm.com violated the TCPA, but instead seeks to hold us responsible for the marketing activities of our service provider partners under principles of agency and vicarious liability. The complaint seeks monetary damages under the TCPA, injunctive relief, and other relief, including attorney's fees. We answered the complaint on February 26, 2016. On March 7, 2017, plaintiffs filed their motion for class certification. Our response is due March 28, 2017. Discovery has commenced, and the matter remains pending in the U.S. District Court for the Northern District of California. Based on currently available information, we determined a loss is not probable or reasonably estimable at this time.

http://investors.alarm.com/static-files/acb4bbca-ea99-43e2-bdbf-851f15c23da6   at pp. 35 and 92.

19.     As discussed below, to the extent Alarm.com claims that it did not directly place the telemarketing calls at issue, it is nonetheless vicariously liable for the calls for the following reasons:

a.     Alarm.com is well aware that several third-parties and agents (as well as unknown JOHN DOE ENTITIES) have and are placing unlawful telemarketing calls on its behalf and it has failed to curtail the unlawful telemarketing calls by these third-parties, agents and unknown JOHN DOE ENTITIES;

b.     Publically filed deposition testimony in a California based class action reveals that Alarm.com provided training materials to third-party agents who contracted with Alarm.com to create lead sources;

c.     Publically filed deposition testimony in a California based class action reveals that Alarm.com intervened to provide remedial training to third-party agents who contracted with Alarm.com to create lead sources;

d.     Publically filed deposition testimony in a California based class action reveals that Alarm.com intervened to remove negative consumer comments relative to certain third-party agents who contracted with Alarm.com to create lead sources;

e.     Publically filed deposition testimony in a California based class action reveals that Alarm.com certain third-party agents who contracted with Alarm.com to create lead sources have had to pay fines for unlawful telemarketing calls;

f.     Publically filed deposition testimony in a California based class action reveals that Alarm.com temporarily suspended certain third-party agents who contracted with Alarm.com to create lead sources if where the third-parties showed non-compliance with TCPA based compliance policies; and

g.     Publically filed deposition testimony in a California based class action reveals that Alarm.com profited from certain third-party agents who contracted with Alarm.com to create lead sources where the conduct of the third-party agents resulted on contracts being formed with consumers.

20.     Plaintiff has sued John Doe Entities Nos. 1 through 10 because Alarm.com has admitted that it authorized the use of third parties to place telemarketing calls on its behalf.

21.     Alarm.com has used unidentified or undisclosed third parties to place telemarketing calls on its behalf in an attempt to avoid having Alarm.com to be liable under the TCPA.

22.     The John Doe Defendant, Nos. 1 through 10, are "person[s]," as defined by 47 U.S.C. § 153 (39) and sometimes referred to as the "John Doe Defendant Entities".

23.     Defendant Nortek's headquarters is located in Carlsbad, California.

24.     Nortek, and at all times mentioned herein was, a corporation and is therefore, a "person," as defined by 47 U.S.C. § 153 (39).

25.     One of Nortek's self-identified brands is 2GIG.

26.     Nortek, at all times mentioned herein, conducted business in this district.

27.     On information and belief, Nortek, at all times mentioned herein, has conducted business in nearly every state of the United States.

28.     Nortek describes itself as "the leader in wireless Security, Home Automation and Personal Safety systems and devices…." *See*, https://nortekcontrol.com/company/about-us/

29.     In fairness to Nortek, its website states that it "embraces efforts to halt unsolicited marketing calls to consumers and is committed to protecting and respecting consumers' rights to privacy." *See*, https://nortekcontrol.com/legal/

30.     Nortek's website claims that it "does not place marketing calls to consumers, nor do we use call centers, or authorize telemarketing calls using any of our brand names, including 2GIG."

31.     Nortek's website also claims that it is "a manufacturer of home security products and we sell to businesses, not to consumers."

32.     Notwithstanding these two statements, Nortek recognizes that consumers have received telemarketing calls promoting Nortek's products:

Although we do not make any of these telemarketing calls, we are concerned when we hear there are phone calls being made that reference our products. Not only are we concerned for the consumers who are being inconvenienced and misled by the calls, we are also concerned about potential reputational damage as a result of the reference to our brand name – these telemarketing calls are not good for our business.

Any use of NSC trademarks, trade names or service marks by unauthorized, direct-to-consumer telemarketers is strictly forbidden and against our company policy.

33.     To the extent Nortek did not directly place the telemarketing calls at issue, it is nonetheless vicariously liable for the calls placed by the John Doe Entities because Nortek is well aware that several third-parties and agents (as well as unknown John Doe Entities) have and are placing unlawful telemarketing calls on its behalf.

34.     As exemplified by the numerous unwanted telemarketing calls to Plaintiff, Nortek has failed to curtail the unlawful telemarketing calls by these third-parties, agents and unknown John Doe Entities.

35.     This Court has federal question jurisdiction because this case arises out of violation of federal law. 47 U.S.C. §227(b); *Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740 (2012).

36.     This Court has federal question jurisdiction and venue pursuant to 15 U.S.C. § 6104(f) which provides that "[a]ny civil action brought under subsection (a) in a district court of the United States may be brought in the district in which the defendant is found, is an inhabitant, or transacts business or wherever venue is proper under section 1391 of title 28."

37.     15 U.S.C. § 6104(f) also provides that "[p]rocess in such an action may be served in any district in which the defendant is an inhabitant or in which the defendant may be found."

38.     Any civil action brought under subsection (a) in a district court of the United States may be brought in the district in which the defendant is found, is an

inhabitant, or transacts business or wherever venue is proper under section 1391 of title 28. Process in such an action may be served in any district in which the defendant is an inhabitant or in which the defendant may be found.

39.     Alternatively, this Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. 1332(d)(2) because the amount in controversy exceeds $5,000,000, in the aggregate (exclusive of interest and costs).

40.     The amount in controversy easily exceeds $5,000,000, because the TCPA provides for a minimum of $500 per violation, and Plaintiff asserts a national class, which will result in at least one Class member from a different state.

41.     Venue is proper in the United States District Court for the District of Illinois pursuant to 18 U.S.C. § 1391(b) because Defendant Alarm.com is subject to personal jurisdiction within this District by virtue of the fact that it has conducted significant and continuous business within this jurisdiction.

42.     Venue is proper because it appears that some of the outbound calls to Plaintiff's cellular phone have used area code, 630, which is an Illinois based area code, thereby suggesting that the calls were identified originating from the Northern District of Illinois.

## IV.    The TCPA

### A.  Summary of the TCPA

43.     The TCPA makes it unlawful for a person to call another person's cellular telephone using an "automatic telephone dialing system" or "artificial or prerecorded voice" without the express consent of the person being called.   47 U.S.C. § 227(b)(1)(A)(iii).

44.     Congress enacted the TCPA to provide persons with a statutory means to prohibit and gain compensation for unsolicited telephone calls and prerecorded or artificial voice messages.

45.     Congress found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call...." Telephone Consumer Protection Act of 1991, Pub. L. 102–243, §§ 2, ¶¶ 5, 10, 12, 13, 105 Stat. 2394 (1991).

46.     Congress enacted the TCPA to redress unsolicited telephone calls and prerecorded or artificial voice messages because it recognized that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. *Id.* at § 11.

47.     Congress found that "[b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* at § 12.

48.     As discussed below, one or more of the Defendants violated Section 227(b)(1)(A)(iii) of TCPA by calling Plaintiff's cellular telephone number to solicit the provision of home alarm services *without first having obtained Plaintiff's prior express written to call him with an "automatic telephone dialing system" or "artificial or prerecorded voice.*

49.     Section 227(b) of TCPA affords Plaintiff a private right of action to sue for monetary damages of a minimum of $500, and Section 227(b)(3) provide up to $1,500 in damages for willful or knowing violations.

50. The Supreme Court had recognized that "[v]oluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 744 (2012).

51. The Supreme Court has also recognized that in enacting the TCPA, Congress made specific findings that "unrestricted telemarketing can be an intrusive invasion of privacy" and are a "nuisance." *Mims,* 132 S. Ct. at 745.

52. The Seventh Circuit has also explained why autodialed calls are both annoying and illegal:

> The machine, called a predictive dialer, works autonomously until a human voice comes on the line. If that happens, an employee in Bill Collector's call center will join the call. But Customer no longer subscribes to Cell Number, which has been reassigned to Bystander. A human being who called Cell Number would realize that Customer was no longer the subscriber. But predictive dialers lack human intelligence and, like the buckets enchanted by the Sorcerer's Apprentice, continue until stopped by their true master.

> Meanwhile Bystander is out of pocket the cost of the airtime minutes and has had to listen to a lot of useless voicemail. (We use Bill Collector as the caller, but this simplified description could as easily use an advertiser that relies for consent on earlier transactions with Customer, or a box that Consumer checked on a vendor's web site.)

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).[1]

53. The calls in this case are even worse than the calls in *Soppet* because when a human came onto the telephone line after Plaintiff answered an autodialed call to his cellular phone that was placed by one or more of the Defendants, the human who spoke with Plaintiff refused to comply with Plaintiff's request to stop calling him.

---

[1] The 7th Circuit was referencing the "Sorcerer's Apprentice" from Fantasia Disney's "Fantasia". A link to this famous scene can be found at http://video.disney.com/watch/sorcerer-s-apprentice-fantasia-4ea9ebc01a74ea59a5867853. At the 1:30 mark viewers will witness Mickey Mouse's mischief. As is well at the 2:00 mark. The result of Mickey's mischief, as referenced by the Seventh Circuit, start at the 5:10 mark, continuing until the 8:20 mark, where the sorcerer in question, retrieves his magical hat and saves Mickey from his mischief.

Much like the buckets enchanted by Mickey Mouse, the autodialed calls and prerecorded messages continued

## B. Summary of Defendants' TCPA Violations

54.     As set forth below, one or more of the Defendants called Plaintiff's cellular telephone for the purpose of advertising the commercial availability or quality of property, goods, or services related to a home security alarm system and did so "without" having Plaintiff's "prior express invitation or permission, in writing."

55.     One or more of the Defendants violated Section 227(b)(1)(A)(iii) by calling Plaintiff's cellular telephone using automatic telephone dialing system (as defined by the Act or the law) without his express written consent.

56.     One or more of the Defendants violated Section 227(b)(1)(A)(iii) by calling Plaintiff's cellular telephone using an artificial or prerecorded voice without his express written consent.

57.     In addition to calling Plaintiff's cellular telephone with an automatic telephone dialing system (as defined by the Act or the law) and using artificial or prerecorded voice without his consent, one or more of the Defendants violated the TCPA by failing to comply with certain TCPA based regulations, exceptions and provisions.

58.     Defendants Alarm.com and Nortek may be liable for one or more of these TCPA violations to the extent that they knew of and/or otherwise authorized the John Doe Defendants to place the calls at issue on their behalf.

59.     Pursuant to authority granted by the TCPA, the Federal Communications Commission ("FCC") has proscribed regulations regarding prerecorded telephone messages. 47 U.S.C. § 227(b)(2).

60.     Section 227(d) of the TCPA is entitled "Technical and Procedural Standards."

61.     Section 227(d)(1) of the TCPA is entitled "Prohibition" and states:

It shall be unlawful for any person within the United States—

(A) . . . to make any telephone call using any automatic telephone dialing system, *that does not comply with the technical and procedural standards prescribed under this subsection*, or to use any telephone facsimile machine or automatic telephone dialing system *in a manner that does not comply with such standards*[.]

(emphasis supplied).

62.     One or more of the Defendants violated Section 227(d)(1)(A) because one or more of the calls placed to Plaintiff by one or more of the Defendants failed to comply with the required technical and procedural standards.

63.     As a result of these failures, Plaintiff and all similarly situated persons are entitled to statutory damages for each phone call made in violation of Section 227(d)(1)(A).

64.     For example, 47 CFR 64.1200(b)(1) states:

(b) All artificial or prerecorded telephone messages shall:

(1) At the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call. If a business is responsible for initiating the call, the name under which the entity is registered to conduct business with State Corporation Commission (or comparable regulatory authority) must be stated.

65.     The FCC's *Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991; Final Rule,* FR Doc 03-18766, 68 Fed. Reg. 143, at pg. 44163 (found at https://www.gpo.gov/fdsys/pkg/FR-2003-07-25/pdf/03-18766.pdf identify the following regulations:

With respect to the caller's name, the prerecorded message must contain, at a minimum, the legal name under which the business, individual or entity calling is registered to operate. The Commission recognizes that some businesses use "d/b/as" or aliases for marketing purposes. The rule

14

does not prohibit the use of such additional information, provided the legal name of the business is also stated.

66. One or more of the Defendants violated 47 CFR § 64.1200(b)(1) because none of the artificial or prerecorded voice telephone messages heard by Plaintiff contained the full legal name of any entities placing the calls or the full legal name of any entities associated with the messages.

67. 47 CFR § 64.1200(b)(2) states:

(b) All artificial or prerecorded telephone messages shall:

(2) During or after the message, state clearly the telephone number (other than that of the autodialer or prerecorded message player that placed the call) of such business, other entity or individual.

68. One or more of the Defendants violated 47 CFR § 64.1200(b)(2) because none of the artificial or prerecorded messages identified any telephone number associated with the person or entity making the calls (or the telephone number of the entity on whose behalf the calls were made).

69. 47 CFR § 64.1200(b)(3) states:

In every case where the artificial or prerecorded voice telephone message includes or introduces an advertisement or constitutes telemarketing and is delivered to a [cellular telephone service], provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism, within two (2) seconds of providing the identification information required in paragraph (b)(1) of this section. When the called person elects to opt out using such mechanism, the mechanism, must automatically record the called person's number to the seller's do-not-call list and immediately terminate the call....

70. One or more of the Defendants violated § 64.1200(b)(3) because when Plaintiff answered Defendants' calls, he was greeted with certain artificial and/or prerecorded messages that did not comply with § 64.1200(b)(3) because the messages did not contain "an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request."

15

71.     47 CFR §§ 64.1200(b)(1), (b)(2) and (b)(3) provide Plaintiff with a private right of action.  *Sengenberger v. Credit Control Servs.*, 2010 U.S. Dist. LEXIS 43874, *13-*14 (N.D. Ill. May 5, 2010).

72.     Plaintiff is entitled to damages of $500 to $1,500 for each separate violation of 47 CFR §§ 64.1200(b)(1), (b)(2) and (b)(3).  *Sengenberger v. Credit Control Servs.*, 2010 U.S. Dist. LEXIS 142528, *3-*5 (N.D. Ill. June 17, 2010).

73.     Section 227(d)(3) of the TCPA is entitled "Artificial or Prerecorded Voice Systems."

74.     Section 227(d)(3) regulates the manner in which persons or businesses must identify themselves when transmitting "any artificial or prerecorded voice message via telephone."

75.     Section 227(d)(3) requires that businesses placing calls with artificial or prerecorded voice messages must identify the name and telephone number of the business initiating a call.

76.     According to Section 227(d)(3):

> The Commission shall prescribe technical and procedural standards for system that are used to transmit any artificial or prerecorded voice message via telephone. Such standards shall require that—
>
> (A) all artificial or prerecorded telephone messages (i) shall, at the beginning of the message, state clearly the identity of the business, individual, or other entity initiating the call, <u>and</u> (ii) shall, during or after the message, state clearly the telephone number or address of such business, other entity, or individual[.]

(Emphasis supplied).

77.     One or more of the Defendants violated Section 227(d)(3) because certain artificial or prerecorded voice messages did not identity of the business initiating the call and/or state clearly the telephone number or address of such business.

16

78. As a result of Defendants' conduct, Plaintiff and all similarly situated persons are entitled to statutory damages for each artificial or prerecorded voice message made in violation of Section 227(d)(3).

79. Section 227(e) of the TCPA is entitled "Prohibition on provision of inaccurate caller identification information."

80. Section 227(e)(1) regulates the use of "caller identification service[s]."

81. In particular, Section 227(e)(1) prohibits persons from knowingly placing calls with misleading or inaccurate caller identification.

82. Section 227(e)(1) of the TCPA states:

> It shall be unlawful for any person within the United States, in connection with any telecommunications service or IP-enabled voice service, to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value, unless such transmission is exempted pursuant to paragraph (3)(B).

83. One or more of the Defendants violated Section 227(e)(1) of TCPA by manipulating its caller identification system to fraudulently suggest to Plaintiff that a telemarketing call was originating from a local call center, when in fact, the live agents were located in Dallas, Texas.

84. Further, more than one prerecorded voice message stated that the calls were being made from or on behalf of "Home Protection Technologies", a fictitious company.

85. As a result of Defendants' conduct, Plaintiff and all similarly situated persons are entitled to statutory damages for each artificial or prerecorded voice message made in violation of Section 227(e)(1).

**C. Relevant FCC Rulings Involving the TCPA**

86. The Court may take judicial notice that on September 18, 2002, the FCC released a "Notice of Proposed Rulemaking and Memorandum Opinion and Order"

17

("2002 FCC Order"). The 2002 FCC Order can be found at https://apps.fcc.gov/edocs_public/attachmatch/FCC-02-250A1.pdf

87.    The 2002 FCC Order described the number and types of consumer complaints that it had received regarding "autodialers" and "predictive dialers":

> In 1991, the Commission received a total of 757 complaints regarding calls placed to subscribers by autodialers. From June 2000 to December 2001, the Commission received over 1,500 inquiries about predictive dialing alone. In addition, the consumer alert titled "Predictive Dialing: Silence on the Other End of the Line" has received over 16,000 hits on the Commission's website since the alert was posted in February of 2001.

See 2002 FCC Order, ¶ 26 (footnote omitted).

88.    The 2002 FCC Order explained how predictive dialers result in "disconnected" calls:

> In addition to automatically dialing numbers, predictive dialers are set up to "predict" the average time it takes for a consumer to answer the phone and when a telemarketer will be free to take the next call. When a consumer answers the telephone, a predictive dialer transfers the call to an available telemarketer. When a predictive dialer simultaneously dials more numbers than the telemarketers can handle, some of the calls are disconnected. The consumer may hear silence on the line as the call is being transferred or a "click" as the call is disconnected.

See 2002 FCC Order, ¶ 26 (footnote omitted).

89.    The 2002 FCC Order identified why "computerize calls" annoy citizens:

> "Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall . . . [O]wning a telephone does not give the world the right and privilege to assault the consumer with machine-generated telephone calls." 137 CONG. REC. S9874 (July 8, 1991)(statement of Sen. Hollings).

See 2002 Order, fn. 90.

90.    The Court may take judicial notice that on July 3, 2003, the FCC declared that a "predictive dialer" is an ATDS for the purposes of the TCPA (the "2003 FCC

18

Order"). A copy of the 2003 FCC Order can be found at

https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

91. The 2003 FCC Order defined a predictive dialer as follows:

A predictive dialer is an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that "predicts" the time when a consumer will answer the phone and a telemarketer will be available to take the call. Such software programs are set up in order to minimize the amount of downtime for a telemarketer. In some instances, a consumer answers the phone only to hear "dead air" because the dialer simply hangs up when no telemarketer is free to take the call.

*See* 2003 FCC Order at fn. 31.

92. The 2003 FCC Order explained how predictive dialers can be "set" to call

consumers in a "predictive" manner:

Each telemarketing company can set its predictive dialer software for a predetermined abandonment rate (i.e., the percentage of hang-up calls the system will allow). The higher the abandonment rate, the higher the number of hang-up calls. High abandonment rates increase the probability that a customer will be on the line when the telemarketer finishes each call. It also, however, increases the likelihood that the telemarketer will still be on a previously placed call and not be available when the consumer answers the phone.

*See* 2003 FCC Order at fn. 32.

93. The 2003 FCC Order discussed how predictive dialers attempt "to 'predict'

the average time it takes for a consumer to answer the phone."

94. Paragraph 146 of the 2003 FCC Order states:

Predictive dialers initiate phone calls while telemarketers are talking to other consumers and frequently disconnect those calls when a telemarketer is unavailable to take the next call. In attempting to "predict" the average time it takes for a consumer to answer the phone and when a telemarketer will be free to take the next call, predictive dialers may either "hang-up" on consumers or keep the consumer on hold until connecting the call to a sales representative, resulting in what has been referred to as "dead air."

 (footnote omitted).

95. 2003 FCC Order discussed how the use of predictive dialers result in "dead

air" or hang-ups:

> the widespread use of predictive dialers now results in many "dead air" or hang-up calls in which consumers do not even have the opportunity to make a do-not-call request. Such calls are particularly burdensome for the elderly and disabled consumers.

*See* Paragraph 91 of the 2003 FCC Order.

96. Paragraph 8 of the 2003 FCC Order discussed how predictive dialers "frequently abandon calls before a telemarketer is free to take the next call." 2003 FCC Order, Paragraph 8 (footnotes omitted).

97. One or more of the Defendants called Plaintiff's cellular telephone with a predictive dialer as defined by the 2003 FCC Order.

98. The 2003 FCC Order requires that telemarketers obtain written consent *prior* to using an ATDS or predictive dialer to call consumers:

> We note that section 227(a)(3) excludes from the definition of telephone solicitation calls to any person with "that person's prior express invitation or permission." Consistent with the FTC's determination, we conclude that for purposes of the national do-not-call list such express permission must be evidenced only by a signed, written agreement between the consumer and the seller which states that the consumer agrees to be contacted by this seller, including the telephone number to which the calls may be placed.

*See* Paragraph 44 of the 2003 FCC Order.

99. One or more of the Defendants called Plaintiff's cellular telephone for telemarketing purposes without his prior written consent.

100. The Court may take judicial notice that on May 9, 2013, the FCC issued a Declaratory Ruling which stated that seller of services can be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers.

101. A copy of the 2003 Declaratory Ruling can is located at https://apps.fcc.gov/edocs_public/attachmatch/FCC-13-54A1_Rcd.pdf.

102.    The 2003 Declaratory Ruling states "a do-not-call request applies to the particular business entity making the call or on whose behalf the call is made." *See* 2003 FCC Declaratory Ruling, fn. 272 (citing 47 C.F.R. § 64.1200(e)(2)(v)).

103.    The Court may take judicial notice that the FCC released a Declaratory Ruling on January 4, 2008 ("2008 FCC Ruling"). A copy of the 2008 FCC Ruling can be found at https://apps.fcc.gov/edocs_public/attachmatch/FCC-07-232A1.pdf.

104.    The 2008 FCC Ruling "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers." *See* 2008 FCC Ruling at ¶ 12.

105.    The 2008 FCC Ruling states that it "first sought comment on predictive dialers in 2002 and asked whether using a predictive dialer is subject to the TCPA's autodialer restrictions." *See*, 2008 FCC Ruling at ¶ 13.

106.    The 2008 FCC Ruling described the 2002 FCC Order as follows:

The Commission found that, based on the statutory definition of "automatic telephone dialing system," the TCPA's legislative history, and current industry practice and technology, a predictive dialer falls within the meaning and definition of autodialer and the intent of Congress. The Commission noted that the evolution of the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective, but that the basic function of such dialing equipment, had not changed—the capacity to dial numbers without human intervention. The Commission noted that it expected such automated dialing technology to continue to develop and that Congress had clearly anticipated that the FCC might need to consider changes in technology.

*See* 2008 FCC Ruling at ¶ 13 (footnotes omitted).

107.    The 2008 FCC Ruling states that "creditors and debt collectors may use predictive dialers to call [cellular] phones," if "the [cellular] phone number was provided by the subscriber in connection with the existing debt." *See* 2008 FCC Ruling at ¶ 14.

108.    The 2008 FCC Ruling states that creditors are "responsible for demonstrating that the consumer provided prior express consent."

109.    According to 2008 FCC Ruling:

To ensure that creditors and debt collectors call only those consumers who have consented to receive autodialed and prerecorded message calls, we conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent. The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications. Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent.

*See* 2008 FCC Ruling, ¶ 10 (footnote omitted).

**V.    The TCFAPA**

**A. Summary of the TCFAPA**

110.    Congress enacted the TCFAPA to protect consumers from "deceptive telemarketing actions or practices and other abusive telemarketing acts or practices." 15 U.S.C. § 6102.

111.    In enacting the TCFAPA, Congress made the "following findings":

(1)     Telemarketing differs from other sales activities in that it can be carried out by sellers across State lines without direct contact with the consumer. Telemarketers also can be very mobile, easily moving from State to State.

(2)     Interstate telemarketing fraud has become a problem of such magnitude that the resources of the Federal Trade Commission are not sufficient to ensure adequate consumer protection from such fraud.

(3)     Consumers and others are estimated to lose $40 billion a year in telemarketing fraud.

(4)     Consumers are victimized by other forms of telemarketing deception and abuse.

(5)     Consequently, Congress should enact legislation that will offer consumers necessary protection from telemarketing deception and abuse.

15 U.S.C. § 6101.

112. In enacting the TCFAPA, Congress authorized the Federal Trade Commission ("FTC") to prescribe rules prohibiting deceptive telemarketing acts or practices and other abusive telemarketing acts or practices

113. In enacting the TCFAPA, Congress authorized the FTC to institute rules to preclude "abusive telemarketing acts or practices."

114. In particular, Congress authorized the FTC to preclude persons from "undertak[ing] a pattern of unsolicited telephone calls which the reasonable consumer would consider coercive or abusive of such consumer's right to privacy."

115. 15 U.S.C. § 6104(a) provides a private right of action for "[a]ny person adversely affected by any pattern or practice of telemarketing which violates any rule of the Commission under section 6102 of" the TCFAPA.

**B. Relevant TCFAPA Based Terms and Definitions**

116. 15 U.S.C. § 6106(4) defines "telemarketing" to mean "a plan, program, or campaign which is conducted to induce purchases of goods or services, … by use of one or more telephones and which involves more than one interstate telephone call."

117. The telephone calls to Plaintiff by and on behalf of the Defendants were acts of "telemarketing" as defined by 15 U.S.C. § 6106(4).

118. 16 C.F.R. § 310.2(dd) defines "seller" to mean "any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration."

119. 16 C.F.R. § 310.2(ff) defines "telemarketer" to mean "any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer[.]"

120. When Defendants called Plaintiff, Plaintiff was called as a consumer as the term is defined by 16 C.F.R. § 310.2(n). 16 C.F.R. § 310.2(n) defines "customer" to mean,

"any person who is or may be required to pay for goods or services offered through telemarketing."

**C. Prohibited Conduct Under the TCFAPA**

121.   16 C.F.R 310.4(a), prohibits "[a]busive telemarketing acts or practices", and provides that "[i]t is an abusive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in" certain prohibited conduct.

122.   16 C.F.R 310.4(a)(8) states that "[i]t is an abusive telemarketing act or practice and a violation of this Rule" when a seller or telemarketers "[f]ail[s] to transmit or cause to be transmitted the telephone number, and ... the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call[.]"

123.   16 C.F.R 310.4(b)(1) states that "[i]t is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in, or for a seller to cause a telemarketer to engage in" certain prohibited conduct.

124.   16 C.F.R 310.4(b)(1) identifies the following prohibited conduct:

> (i) Causing any telephone to ring, or engaging any person in telephone conversation, repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number;

> (ii) Denying or interfering in any way, directly or indirectly, with a person's right to be placed on any registry of names and/or telephone numbers of persons who do not wish to receive outbound telephone calls established to comply with paragraph (b)(1)(iii)(A) of this section, including, but not limited to, harassing any person who makes such a request; hanging up on that person; failing to honor the request; requiring the person to listen to a sales pitch before accepting the request; assessing a charge or fee for honoring the request; requiring a person to call a different number to submit the request; and requiring the person to identify the seller making the call or on whose behalf the call is made;

> (iii) Initiating any outbound telephone call to a person when:

>> (A) That person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered or made on behalf

of the charitable organization for which a charitable contribution is being solicited; or

(B) That person's telephone number is on the "do-not-call" registry, maintained by the Commission, of persons who do not wish to receive outbound telephone calls to induce the purchase of goods or services

(iv) Abandoning any outbound telephone call. An outbound telephone call is "abandoned" under this section if a person answers it and the telemarketer does not connect the call to a sales representative within two (2) seconds of the person's completed greeting.

(v) Initiating any outbound telephone call that delivers a prerecorded message, other than a prerecorded message permitted for compliance with the call abandonment safe harbor in § 310.4(b)(4)(iii), unless:

(A) In any such call to induce the purchase of any good or service, the seller has obtained from the recipient of the call an express agreement, in writing, that:

(i) The seller obtained only after a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person;

(ii) The seller obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service;

(iii) Evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller; and

(iv) Includes such person's telephone number and signature;

(v) Initiating any outbound telephone call that delivers a prerecorded message, other than a prerecorded message permitted for compliance with the call abandonment safe harbor in § 310.4(b)(4)(iii), unless:

* * *

(B) In any such call to induce the purchase of any good or service, … the seller or telemarketer:

(i) Allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting an unanswered call; and

25

(ii) Within two (2) seconds after the completed greeting of the person called, plays a prerecorded message that promptly provides the disclosures required by § 310.4(d) or (e), followed immediately by a disclosure of one or both of the following:

(A) In the case of a call that could be answered in person by a consumer, that the person called can use an automated interactive voice and/or keypress-activated opt-out mechanism to assert a Do Not Call request pursuant to § 310.4(b)(1)(iii)(A) at any time during the message. The mechanism must:

(1) Automatically add the number called to the seller's entity-specific Do Not Call list;

(2) Once invoked, immediately disconnect the call; and

(3) Be available for use at any time during the message[.]

125.    As set forth above and detailed below, Defendants and/or one or more of the John Doe Defendants called Plaintiff in violation of the TCFAPA.

126.    A prevailing Plaintiff in a TCFAPA suit is entitled to recovery reasonable attorney's fees and fees related to expert witnesses. 15 U.S.C. § 6104(d).

**D. Defendants Did Not Have Plaintiff's Consent to Call Him for Telemarketing Purposes**

127.    47 CFR § 64.1200(f)(14)(i) states that the term "telephone solicitation" "does not include a call or message ... with the person's prior express invitation or permission."

128.    Pursuant to 47 CFR § 64.1200(f)(8), the term "prior express written consent" means:

an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

129.    Section 64.1200(f)(8) further explains that a written agreement shall

26

 (i) ...include a clear and conspicuous disclosure informing the person signing that:

(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

130.    Plaintiff never signed document, let alone any document that contains any of the above terms.

131.    47 CFR § 64.1200(f)(8)(ii) states that "[t]he term 'signature' shall include an electronic or digital form of signature...."

132.    Plaintiff never executed an electronic or digital form of a signature authorizing any of the Defendants to call him for the purpose of a "telephone solicitation" as defined by 47 CFR § 64.1200(f)(14).

133.    47 CFR § 64.1200(f)(14)(i) states that the term "telephone solicitation" "does not include a call or message ... with the person's prior express invitation or permission."

134.    Plaintiff never executed an electronic or digital form of a signature authorizing any of the Defendants to call him using "automatic telephone dialing system" or an "artificial or prerecorded voice."

135.    47 CFR § 64.1200(f)(1) states that "[t]he term *advertisement* means any material advertising the commercial availability or quality of any property, goods, or services."

136.    47 CFR § 64.1200(f)(9) states that "[t]he term *seller* means the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.

137.   47 CFR § 64.1200(f)(11) states that "[t]he term *telemarketer* means the person or entity that initiates a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."

138.   47 CFR § 64.1200(f)(12) states that "[t]he term *telemarketing* means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.

139.   47 CFR § 64.1200(f)(14) states that "[t]he term *telephone solicitation* means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person...."

140.   As set forth below, one or more of the Defendants called Plaintiff's cellular telephone for the purpose of encouraging Plaintiff purchase or rent "in, property, goods, or services" related to home security alarm system.

141.   47 CFR § 64.1200(f)(14) states that "[t]he term *telephone solicitation* ... does not include a call or message:

> (i) To any person with that person's prior express invitation or permission;
> (ii) To any person with whom the caller has an established business relationship ....

142.   As set forth below, one or more of the Defendants called Plaintiff's cellular telephone for the purpose of encouraging Plaintiff to purchase or rent "in, property, goods, or services" related to a home security alarm system, and did so without Plaintiff's "invitation or permission."

143.   As set forth below, one or more of the Defendants called Plaintiff's cellular telephone for the purpose of encouraging Plaintiff to purchase or rent "in, property,

goods, or services" related to a home security alarm system, and did so without having "an established business relationship" with Plaintiff.

144. "The term *unsolicited advertisement* means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 CFR § 64.1200(f)(15).

### E. Defendants Failed to Place Plaintiff on Their "Do-Not-Call" List and Failed to Comply with Relevant "Do-Not-Call" Regulations

145. All telemarketers are required to maintain a "do-not-call" policy and make such policy available upon demand. *See* 2003 FCC Order, fn. 272 ("the Commission's rules require that persons or entities engaged in telephone solicitations must have a written policy available upon demand for maintaining a do-not-call list, must inform and train any personnel engaged in telephone solicitations in the existence and use of the list, and must record the request and place the subscriber's name and telephone number on the do-not-call list").

146. Plaintiff repeatedly asked Defendants to put him on their do-not-call list(s).

147. Alarm.com violated 47 CFR 64.1200(c)(2) by causing one or more of the John Doe Defendants to call Plaintiff despite him repeatedly asking them to be place him on their do-not-call list(s).

148. One or more of the John Doe Defendants violated 47 CFR 64.1200(c)(2) by calling Plaintiff despite him v repeatedly asking them to place him on their do-not-call list(s).

149. Accordingly, if John Doe 1 called on behalf of Alarm.com and Plaintiff told John Doe 1 to stop calling (which is the case), the do not call request would apply to John Doe 1 and Alarm.com.

**F. Defendants Failed to Comply with Required Telemarketing Disclosures**

150.   47 C.F.R. § 64.1200(a)(7) states that telemarketers and sellers "must provide" two types of prerecorded disclosures "[w]henever a live sales representative is not available to speak with the person answering the call."

151.   47 C.F.R. § 64.1200(a)(7)(i)(A) states:

(i) Whenever a live sales representative is not available to speak with the person answering the call, within two (2) seconds after the called person's completed greeting, the telemarketer or the seller must provide:

**(A)** A prerecorded identification and opt-out message that is limited to disclosing that the call was for "telemarketing purposes" and <u>states</u> the name of the business, entity, or individual on whose behalf the call was placed, and a telephone number for such business, entity, or individual that permits the called person to make a do-not-call request during regular business hours for the duration of the telemarketing campaign; provided, that, such telephone number may not be a 900 number or any other number for which charges exceed local or long distance transmission charges, and

**(B)** An automated, interactive voice- and/or key press-activated opt-out mechanism that enables the called person to make a do-not-call request prior to terminating the call, including brief explanatory instructions on how to use such mechanism. When the called person elects to opt-out using such mechanism, the mechanism must automatically record the called person's number to the seller's do-not-call list and immediately terminate the call.

152.   47 C.F.R. § 64.1200(a)(7) requires that the above disclosures must take place "within two (2) seconds after the called person's completed greeting."

153.   47 CFR 64.1200(b) requires certain disclosures to be made during "[a]ll artificial or prerecorded voice telephone messages."

154.   47 CFR 64.1200(b) states:

(b) All artificial or prerecorded voice telephone messages shall:

(1) At the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call. If a business is responsible for initiating the call, the name under which the entity is registered to conduct business with the State Corporation Commission (or comparable regulatory authority) must be stated[.]

(2) During or after the message, state clearly the telephone number (other than that of the autodialer or prerecorded message player that placed the call) of such business, other entity, or individual. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges. [....] and

(3) In every case where the artificial or prerecorded voice telephone message includes or introduces an advertisement or constitutes telemarketing and is delivered to a [cellular telephone service], provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism, within two (2) seconds of providing the identification information required in paragraph (b)(1) of this section. When the called person elects to opt out using such mechanism, the mechanism, must automatically record the called person's number to the seller's do-not-call list and immediately terminate the call ....

(Emphasis supplied).

155. "When the artificial or prerecorded voice telephone message is left on an answering machine or a voice mail service," 47 CFR 64.1200(b)(3) requires the following:

such message must also provide a toll free number that enables the called person to call back at a later time and connect directly to the automated, interactive voice- and/or key press-activated opt-out mechanism and automatically record the called person's number to the seller's do-not-call list.

156. Defendants violated 47 C.F.R. § 64.1200(a)(7) and (b)(3) by failing to utilize a message that provided (within two seconds) a toll free number to call back at a later time and connect directly to the automated, interactive voice- and/or key press-activated opt-out mechanism and automatically record the called person's number to the seller's do-not-call list.

**G. Defendants Violated Allowable Calling Time Regulations**

157. 47 CFR 64.1200(c), read in combination with 47 CFR 64.1200(e), prohibits certain types of conduct in relation to "any telephone solicitation."

158. 47 CFR 64.1200(e) states:

The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991."

159.    47 CFR 64.1200(c), as modified by 47 CFR 64.1200(e) and the 2003 FCC Order to incorporate cellular telephone subscribers, identifies the following prohibits on telephone solicitations:

(c) No person or entity shall initiate any telephone solicitation to:

(1) Any [cellular] telephone subscriber before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location)[.]

160.    Alarm.com, Nortek or one or more of the John Doe Defendants violated 47 CFR 64.1200(c)(1) by placing autodialed call to Plaintiff's cellphone from the number (520)353-0103 at 5:09 am on May 2, 2016.

## VI.    ADDITIONAL VIOLATIONS OF THE TCPA AND TCFAPA

161.    From January 11, 2016 through May 4, 2016, Plaintiff received at least 20 autodialed phone calls and prerecorded voice messages from Alarm.com, Nortek, or one or more of the John Doe Defendants acting on behalf of Alarm.com or Nortek.

162.    On January 12, 2016, at 2:37 p.m., Alarm.com, Nortek, and/or one of the John Doe Defendants left prerecorded voice message to Plaintiff's cellphone from an (878) area code where the number is associated with a security company with the purported name C Securit.

163.    On information and belief, this company is an agent of Alarm.com and/or Nortek.

164.    During this call, Plaintiff requested a written copy the caller's do-not-call policy, and again, Plaintiff was never sent a copy.

165.   Alarm.com, Nortek, and/or one of the John Doe Defendants replied with a prerecorded response which did not acknowledge Plaintiff's request.

166.   Plaintiff never received a copy of a requested do-not-call policy.

167.   On January 22, 2016, at 11:18 a.m., Alarm.com, Nortek, and/or one of the John Doe Defendants  placed another prerecorded voice message to Plaintiff's cellphone from an (754) area code where the number is associated with a security company with the purported name Neon Security.

168.   On information and belief, this company is an agent of Alarm.com and/or Nortek.

169.   During this call, Plaintiff requested a written copy the caller's do-not-call policy.

170.   Plaintiff also requested to be placed on do-not-call list.

171.   Alarm.com, Nortek, and/or one of the John Doe Defendants replied with the prerecorded response "Sorry to disturb you. Goodbye" and then terminated the phone call.

172.   Plaintiff never received a copy of Defendants' Do-Not-Call policy.

173.    Alarm.com, Nortek, and/or one of the John Doe Defendants violated 47 CFR 64.1200(d)(2) because the above allegations show that employees or agents engaged in telemarketing were not "informed and trained in the existence and use of the do-not-call list."

174.   Alarm.com, Nortek, and/or one of the John Doe Defendants violated 47 CFR 64.1200(d)(3) because the above allegations show that Alarm.com did not record and place Plaintiff's cellular number on a do-not-call list.

175.   Alarm.com, Nortek, and/or one of the John Doe Defendants violated 47 CFR 64.1200(d)(4) because the above allegations show that Alarm.com did not provide

33

Plaintiff "with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

176.   Alarm.com, Nortek, and/or one of the John Doe Defendants violated 47 CFR 64.1200(d)(6) because the above allegations plausibly suggest that one or more of them did not maintain a record of Plaintiff's do-not-call request.

177.   Plaintiff was called by one of the Defendants on May 4, 2016, at 6:08 p.m.

178.   During this call the agent said he was calling for "Home Protection Technologies."

179.   When Plaintiff asked where the agent was based, the agent said "Dallas."

180.   During the May 2, 2016, call, Plaintiff was transferred to another agent.

181.   Plaintiff asked the agent what company he was calling from and the agent said, "Family Protection."

182.   During the May 2, 2016 telephone call the agent said that Plaintiff's telephone "number exists in the internal do-not-call list . . . but you're still getting called. Is that the case?"

183.   Plaintiff responded by asking "why would you guys keep calling if you thought that were the case?"

184.   The agent responded by saying "I will make sure that nobody calls again from our side at least."

185.   The agent also said "you were transferred to me, I never called you. This is a third party, they are transferring."

186.   The agent on the May 2, 2016 telephone call described the third party as "one of 14 or 15 offshore accounts that give us transfers."

187.   Plaintiff told the agent that he wanted to speak to a supervisor.

188.    After Plaintiff was placed on hold for five minutes, a person named "Ross" claiming to be a manager from the scheduling department came on the line.

189.    Plaintiff asked "Ross" who he worked for, and Ross answered "Family Protections."

190.    Ross indicated that a local technician would install a "2GIG security" products and that "Family Protections" would collect payments.

191.    When Plaintiff asked Ross for a website to review, Ross said "familyprotections.com."

192.    When Plaintiff attempted to pull up this website, he could not locate any such website.

193.    On information and belief, "Family Protections" is a business name used by Alarm.com, Nortek or one of the John Doe Defendant Entities to avoid legal liability for placing unlawful telemarketing calls.

194.    "Ross", or another agent, told Plaintiff ". . . we are licensed with the top nationwide installing companies to install alarm services for you."

195.    During the May 2, 2016 call, Plaintiff asked, "[are] you guys with Alarm.com?"

196.    In response, the agent said "Alarm.com is actually one of the applications which is used by most of the companies for the basic interactive services, so yeah, depending upon your installer…."

197.    Plaintiff responded by seeking clarification and asked "so [Alarm.com] they are the interactive part of it and … 2GIG is the system itself?"

198.    The agent replied "yeah."

199.    When Plaintiff asked the agent if he could view a webpage for the security system that was being promoted by the agent, the agent said "2GIG."

200.  2GIG's website "Why 2GIG?" refers to Nortek as follows:

*2GIG, a brand of Nortek Security & Control, has responded to these trends and consumer demands with their GC2 and GC3 systems, the industry's first, leading and most feature-rich self-contained security & home control platform. Complete with an easy-to-use color touch screen, with cell radio and wireless automation support built in, the GC2 and GC3 systems are the most advanced solutions in the market today. Through our partnerships with Alarm.com, iControl, Uplink and Telular, consumers can control their system from their smartphone or the Internet\*, and dealers can send customized messages to their customers! We invite you to step into the future with your own 2GIG-brand security & home control system.*

http://www.2gig.com/why-2gig/ (last reviewed on March 22, 2018).

201.  This quoted language is depicted below along with the logo of Alarm.com



202.  Above screen capture was obtained on March 22, 2018.

203.  Nortek's "Becoming a Partner" webpage explains its relationship with 2GIG as follows:



204. This screen capture was obtained on March 22, 2018.

205. Based upon the representation of the agent, and the website references, on information and belief, the May 2, 2016 call was plausibly placed on behalf of Nortek or Alarm.com.

206. On January 11, 2016 at 5:24 p.m., Plaintiff received a prerecorded voice message from area code (720) by or on behalf of Alarm.com, Nortek, and/or one of the John Doe Defendants.

207. The call offered Plaintiff the opportunity to receive a free wireless home security system in exchange for placing a sign in Plaintiff's yard.

208. The (720) number is associated with a security company with the purported name Byte Security.

209. On information and belief, this company is an agent of Alarm.com and/or Nortek.

210. On January 26, 2016 at 9:19 a.m., Alarm.com, Nortek, and/or one of the John Doe Defendants placed another prerecorded voice message to Plaintiff's cellphone

from a (602) area code where the number is associated with a security company with the purported name of Byte Security.

211.   On information and belief, this company is an agent of Alarm.com and/or Nortek.

212.   On February 11, 2016 at 11:30 p.m., Alarm.com, Nortek, and/or one of the John Doe Defendants  placed another prerecorded voice message to Plaintiff's cellphone from the (213) area code where the number is associated with a security company with the purported name Alliant Home Security.

213.   On information and belief, this company is an agent of Alarm.com and/or Nortek.

214.   During this call Plaintiff asked to be placed on a Do-Not-Call list.

215.   Alarm.com, Nortek, and/or one of the John Doe Defendants replied with the prerecorded response saying "Hahaha are you making fun of me? I am not going to answer that question. I'll put you on our Do-Not-Call list, have a nice day!"

216.   On February 16, 2016 at 8:46 a.m., Alarm.com, Nortek, and/or one of the John Doe Defendants  placed another autodialed call to Plaintiff's cellphone from  a (908) area code where the number is associated with a security company with the purported names of Security Promotions, Security System, Security Alarm and Home Protection Technology.

217.   On information and belief, one of these companies is an agent of Alarm.com and/or Nortek.

218.   Plaintiff was unable to answer this call.

219.   On February 16, 2016 at 11:14 a.m., Alarm.com, Nortek, and/or one of the John Doe Defendants placed another autodialed call to Plaintiff's cellphone from the (908) area code. Plaintiff was unable to answer this call.

220.   On February 17, 2016 at 10:56 a.m., Alarm.com, Nortek, and/or one of the John Doe Defendants placed another prerecorded voice message to Plaintiff's cellphone from the number (908) 264-6267.

221.   During this call Plaintiff spoke to a live agent and asked if the company calling him had a website.

222.   The live person speaking with Plaintiff provided the address www.Alarm.com in response.

223.   On February 19, 2016 at 6:57 p.m., Alarm.com, Nortek, and/or one of the John Doe Defendants placed another prerecorded voice message to Plaintiff's cellphone from an (657) area code where the number is associated with a security company with the purported names of FBN Security, Security System and Home Protection Technology.

224.   On information and belief, one of these companies is an agent of Alarm.com and/or Nortek.

225.   During this call Plaintiff said, "Please don't send me any more prerecorded voice message calls. Okay?"

226.   Alarm.com, Nortek, and/or one of the John Doe Defendants replied with the prerecorded response that said, "Sure. Hold on just a second for me."

227.   Music began to play, and Plaintiff hung up.

228.   On February 19, 2016, at 8:01 p.m., Alarm.com, Nortek, and/or one of the John Doe Defendants  placed another prerecorded voice message to Plaintiff's cellphone from the (657) area code where the number is associated with one or more of the following security companies, FBN Security, Security System and Home Technologies.

229.   During this call, Plaintiff asked the person calling him if it was a real person.

230. In response to Plaintiff's question, Alarm.com, Nortek, and/or one of the John Doe Defendants left a prerecorded response which stated, "Yes, I am a real person; I am just talking to you through a computer, that's all."

231. Plaintiff replied by saying, "I asked you not to do any more robocalls, do you remember that?"

232. Plaintiff received the prerecorded response, "No."

233. Plaintiff responded by saying, "You don't remember that?"

234. Alarm.com, Nortek, and/or one of the John Doe Defendants replied with prerecorded response that said, "Yes, there may be other companies calling around. I'm pretty sure it wasn't us."

235. Plaintiff then said, "Don't do any more robocalls."

236. Alarm.com, Nortek, and/or one of the John Doe Defendants replied with the prerecorded response which stated, "No problem" and the call was terminated by Alarm.com or one or more of the John Doe Defendants.

237. On March 15, 2016 at 9:43 a.m., Alarm.com, Nortek, and/or one of the John Doe Defendants placed another prerecorded voice message to Plaintiff's cellphone from the (714) area code where the number is associated with a security company with the purported names of Home Protection Security, Homezcheck and Premier Home Security.

238. On information and belief, one of these companies is an agent of Alarm.com and/or Nortek.

239. Approximately three minutes later, on March 15, 2016 at 9:46 a.m., Alarm.com, Nortek, and/or one of the John Doe Defendants placed another prerecorded voice message to Plaintiff's cellphone from the number (714) 463-6447.

240. During this call Plaintiff asked "[this] a prerecorded message, right?"

241. Alarm.com, Nortek, and/or one of the John Doe Defendants replied with the prerecorded response, "Yes."

242. On March 22, 2016 at 11:55 a.m., Alarm.com, Nortek, and/or one of the John Doe Defendants placed another autodialed call to Plaintiff's cellphone from the (630) area code where the number is associated with a security company with the purported Home Protection.

243. On information and belief, this company is an agent of Alarm.com and/or Nortek.

244. Alarm.com, Nortek, and/or one of the John Doe Defendants immediately hung up after Plaintiff answered.

245. On March 22, 2016 at 2:04 p.m., Alarm.com, Nortek, and/or one of the John Doe Defendants placed another prerecorded voice message to Plaintiff's cellphone from the number (630) 439-8988.

246. On April 12, 2016 at 3:33 p.m., Alarm.com, Nortek, and/or one of the John Doe Defendants placed another prerecorded voice message to Plaintiff's cellphone from the number (520) 353-0103.

247. During this call Plaintiff spoke with a live agent claiming to be "One of the managers on duty."

248. The alleged manager hung up on Plaintiff after Plaintiff asked for the name and location the company calling him.

249. On April 18, 2016 at 2:21 p.m., Alarm.com, Nortek, and/or one of the John Doe Defendants  placed another prerecorded voice message to Plaintiff's cellphone from the (520) area code where the number is associated with a security company with the purported name Home Security.

41

250. On information and belief, this company is an agent of Alarm.com and/or Nortek.

251. Plaintiff answered the call and twice asked twice not to be called.

252. During this Plaintiff call said, "Just make sure you don't send any robocalls back, okay?"

253. There was a lengthy, multi-second pause before Alarm.com, Nortek, and/or one of the John Doe Defendants replied with the prerecorded response, "Okay!"

254. Plaintiff then said, "Put me on your Do-Not-Call list while you're at it okay?"

255. Alarm.com, Nortek, and/or one of the John Doe Defendants replied with the prerecorded response, "Okay, no problem. We'll take you off the list here, and I'm sorry for bothering you today. Have a good day."

256. On April 21, 2016 at 12:39 p.m., Alarm.com, Nortek, and/or one of the John Doe Defendants placed another autodialed call to Plaintiff's cellphone from a private number.

257. Upon answering, Plaintiff heard a lengthy, multi-second pause followed by a distorted beeping sound.

258. No person answered the call and Plaintiff hung up.

259. On April 21, 2016 at 1:27 p.m., Alarm.com, Nortek, and/or one of the John Doe Defendants placed another prerecorded voice message to Plaintiff's cellphone from the number (520) 353-0103.

260. During this call Plaintiff asked if the person calling him was a real person.

261. Alarm.com, Nortek, and/or one of the John Doe Defendants replied with the prerecorded response, "Yes, I am a real person; I'm just talking to you through a computer, that's all."

262.   During this call Plaintiff was transferred to a live agent.

263.   The live agent hung up after Plaintiff asked, "What was the name of your company?"

264.   One or more of the calls placed to Plaintiff's cellular telephone number ending in 6084 between January 11, 2016, and May 4, 2016, were made without his prior express written consent by or with the approval of Alarm.com and/or Nortek or through authorized and/or one or more of the John Doe Defendants who were controlled agents of Alarm.com and/or Nortek.

265.   One or more of the calls placed to Plaintiff's cellular telephone number ending in 6084 between January 11, 2016, and May 4, 2016, were made with "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1) by or with the approval of Alarm.com and/or Nortek or through authorized and/or one or more of the John Doe Defendants who were controlled agents of Alarm.com and/or Nortek.

266.   One or more of the calls placed to Plaintiff's cellular telephone number ending in 6084 between January 11, 2016, and May 4, 2016, were made with a predictive dialer as defined by the above FCC Orders by or with the approval of Alarm.com and/or Nortek or through authorized and/or one or more of the John Doe Defendants who were controlled agents of Alarm.com and/or Nortek.

267.   One or more of the calls placed to Plaintiff's cellular telephone number ending in 6084 between January 11, 2016, and May 4, 2016, were made with prerecorded voice messages by or with the approval of Alarm.com and/or Nortek or through authorized and/or one or more of the John Doe Defendants who were controlled agents of Alarm.com and/or Nortek.

268.   None of the calls placed by or with the approval of Alarm.com and/or Nortek or through authorized and/or one or more of the John Doe Defendants who were

controlled agents of Alarm.com and/or Nortek identified the full legal name of Alarm.com and/or Nortek.

### VII.    PLAINTIFF HAS ASSERTED CONCRETE AND COGNIZABLE HARM

269.    From January 11th 2016 through May 4th 2016, Plaintiff received at least 20 autodialed phone calls and prerecorded voice messages by Alarm.com or one or more of the John Doe Defendants.

270.    Through these actions, Plaintiff suffered an invasion of a legally protected interest in privacy, which is addressed and protected by the TCPA and the TCFAPA.

271.    Alarm.com or one or more of the John Doe Defendants has intruded upon Plaintiff's solitude or seclusion by harassing and/or threatening Plaintiff by:

(a) claiming that Alarm.com or one or more of the John Doe Defendants can obtain Plaintiff's home address at any time;

(b) informing Plaintiff that his address was "everywhere on the internet";

(c) waking Plaintiff from sleep multiple times, calling at 5:09 a.m.;

(d) calling after 11:30 p.m.;

(e) abandoning calls when Plaintiff answered;

(f) hanging up on Plaintiff;

(h) lying about the identity of the caller; and

(i) transmitting calls with abrasive beeping noises.

272.    This conduct would be highly offensive to a reasonable person and constitute "extreme and outrageous" conduct.

273.    Plaintiff was frustrated and distressed because, despite telling Alarm.com or one or more of the John Doe Defendants several times to stop calling him on his cell phone, Defendant Alarm.com or one or more of the John Doe Defendants continued to harass Plaintiff with prerecorded solicitation calls using an ATDS.

274.   Defendants' repeated calls wasted Plaintiff's time, depleted his phone battery and forced Plaintiff to silence his cellular phone and/or block incoming numbers.

275.   On information and belief, Alarm.com or Nortek instructed one or more of the John Doe Defendants to call Plaintiff in the manner described above.

276.   Plaintiff requested numerous times that one or more of the Defendants not call Plaintiff's cellular telephone.

277.   Plaintiff never provided permission nor consent for Alarm.com, Nortek, or one or more of the John Doe Defendants to call Plaintiff on his cellular telephone number.

278.   The telephone number that Alarm.com or one or more of the John Doe Defendants called was assigned to a cellular telephone service for which Plaintiff incurred a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1) and 47 C.F.R. § 64.1200 (a)(1).

279.   Defendants' actions constitute the tort of invasion of privacy by intrusion upon seclusion.

280.   Plaintiff has suffered and continues to suffer from emotional distress, mental anguish, and anxiety as a direct result of Defendants' unlawful collection practices.

281.   Defendants' harassing phone calls have severely disrupted Plaintiff's daily life and general well-being.

282.   Defendants' phone calls have caused Plaintiff actual harm including, but not limited to, physical harm, invasion of privacy, aggravation that accompanies unsolicited telephone calls, emotional distress, mental anguish, increased risk of personal injury due to the distraction caused by the phone calls,

283.    Defendants' phone calls have diminished the value and utility of Plaintiff's telephone equipment and telephone subscription services.

284.    Defendants' phone calls have caused unnecessary usage (wear and tear) to Plaintiff's cellular telephone.

285.    The Supreme Court recognized that Congress has the power to enact laws to elevate certain harms "to the status of legally cognizable injuries." *Spokeo, Inc., v. Robbins*, 136 S. Ct. 1540, 1549 (2016).

286.    *Spokeo* states that "Congress is well positioned to identify intangible harms that meet minimum Article III requirements." *Id.*

287.    *Spokeo* also stated that "both history and the judgment of Congress play important roles" in deciding whether a statutory violation is a concrete, de facto injury." *Id.*

288.    After the Supreme Court's June 17, 2016, decision in *Spokeo*, the following courts have held that TCPA alleged demonstrate concrete and legally cognizable harm. *See, e.g., Susinno v. Work Out World Inc.*, 862 F.3d 346, 348 (3d Cir. 2017) (holding that Article III standing existed where a TCPA plaintiff received a "single solicitation" to her cell phone from a fitness company that resulted in the "receipt of [a] call and voicemail"); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (finding two unwanted text messages constituted a concrete injury under the TCPA, as they "present the precise harm and infringe the same privacy interests Congress sought to protect"); *Hossfeld v. Compass Bank*, 2017 U.S. Dist. LEXIS 182571, *14-15 (N.D. Al. Nov. 3, 2017) ("Mr. Hossfeld has undoubtedly cleared the particularity hurdle and asserted a personal connection to the harm claimed that is sufficient to establish this prong of the standing requirement. The two unsolicited calls described in Ms. Hossfeld's first amended complaint were made to his personal cell phone number. (Doc. 12 at 4 ¶

17). Mr. Hossfeld further alleges how those automatically-dialed calls impacted him personally—they temporarily deprived him from being able to use his cell phone, invaded his privacy, wasted his time, and reduced his cell phone's battery's life. (Doc. 12 at 7 ¶ 40).”); _Etzel v. Hooters of Am., LLC_, 223 F. Supp. 3d 1306, 1311, 1312 (N.D. Ga. 2016) (rejecting application of _de minimis_ rule to "a lone text message after withdrawal of consent" (internal quotation marks omitted) given "the [unambiguous] language of the TCPA ... that a violation can occur from a single call" under § 227(b)(1)(A) in contrast to § 227(c)(5) which requires more than one call); _Cabiness v. Educ. Fin. Solutions, LLC_, 2016 U.S. Dist. LEXIS 142005, 2016 WL 5791411, at *5-6 (N.D. Cali. Sept. 1, 2016)(a violation of the TCPA "is sufficient on its own to constitute an injury in fact" because "[e]very unconsented call through the use of an ATDS to a consumer's cellular phone results in actual harm"); _Cour v. Life360, Inc._, 2016 U.S. Dist. LEXIS 98945, 2016 WL 4039279, at *2 (N.D. Cal. July 28, 2016) (finding concrete injuries where plaintiff alleged he received one text message in violation of the TCPA).

## VIII. THE ELEMENTS OF FRCPA 23 ARE SATISFIED

289. The proposed classes are also ascertainable because there are commercially available applications and program which can identify whether telephone number have always been identified as cellular numbers, or alternatively, when a particular residential/landline telephone number was "ported" (turned into/converted to) a cellular telephone number. _See, e.g., In re Community Bank of Northern Virginia Mortg. Lending Practices Litigation_, 795 F.3d 380, 397 (3d Cir. 2015) (finding that the plaintiff's proposed class was ascertainable because the defendant "possesse[d] all of the relevant bank records needed to identify the putative class members").

290.    Excluded from the proposed class(es) are counsel for the parties, Defendants' employees and agents, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

291.    Numerosity is also satisfied because Defendants called over 40 persons in the manner outlined above.

292.    The joinder of all members of the Class is impracticable. While the exact number of Class members is presently unknown, the persons called by Defendants can be ascertained through discovery, and Plaintiff believes there are hundreds and possibly thousands of Class members based upon Defendants' representations regarding the scope of their business.

293.    Commonality and predominance are satisfied because Defendants acted in a common manner toward Plaintiff and the proposed class members by calling persons utilizing an autodialer or predictively dialed calls without consent and after Defendants were told to stop calling.

294.    Commonality and predominance are satisfied because Defendants acted in a common manner toward Plaintiff and the proposed class members by calling persons utilizing prerecorded or artificial voice messages without consent and after Defendants were told to stop calling.

295.    There are several questions of law and fact common to the claims of Plaintiff and the proposed class members such as (a) whether Defendants called Plaintiff and the proposed class members with an autodialer and/or predictive dialer, (b) whether Defendants called Plaintiff and the proposed class members utilizing pre-recorded and/or artificial messages, (c) whether Defendants ignored consumers who told Defendants to stop calling, and (e) whether Defendants' conduct constitutes part of a pattern of noncompliance with the TCPA to support the imposition of treble damages.

296. These common questions predominate over any potential individual issues.

297. Plaintiff's claims are typical of the claims of the proposed class members, claims all arise from the same operative facts and are based on the same legal causes of action, which are (a) that Defendants used a similar autodialer or predictive dialer system to place calls placed to Plaintiff's cellular phone and the cellular phones of the proposed class members, (b) that Defendants used similar pre-recorded or artificial voice messages when Defendants called Plaintiff's cellular phone and the cellular phones of the proposed class members, (c) that Defendants continued to call Plaintiff's cellular phone and the cellular phones of the proposed class members despite Defendants being told to stop calling and (d) that Defendants continued to call Plaintiff's cellular phone and the cellular phones of the proposed class members with prerecorded or artificial voice messages despite being told to stop calling.

298. A class action is an appropriate method for the fair and efficient adjudication of this controversy, and superior to other available methods for the fair and efficient adjudication of this controversy.

299. The common questions of law and fact enumerated above predominate over questions affecting only individual Class members.

300. The likelihood that individual Class members will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, as well as the absence of a fee shifting mechanism.

301. The expense and burden of individual litigation would make it impracticable for proposed Class members to prosecute their claims individually.

302.   Plaintiff will fairly, adequately and vigorously represent and protect the interests of the proposed class members and has no interests antagonistic to those of the Class.  Plaintiff has no defenses unique to him.

303.   Plaintiff's counsel, James C. Vlahakis, is an experienced consumer class action litigator who has defended over a hundred consumer-based claims since 1998. For example, in conjunction with class counsel, Mr. Vlahakis has obtained Court approval of numerous class actions.  *See, e.g., In Re Capital One Telephone Consumer Protection Act Litigation*, 2012-cv-10064 (N.D. Ill.) ($75 million dollar TCPA based automated dialing system settlement); *Prater v. Medicredit, Inc.*, 2014-cv-0159 ($6.3 million dollar TCPA based automated dialing system wrong party settlement); *INSPE Associates v. CSL Biotherapies, Inc.* (N.D. Ill.) ($3.5 million fax based settlement). Vlahakis' co-counsel are competent and experienced consumer rights attorneys. Common questions of proof predominate over any potential individual issues.

304.   Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has no interest antagonistic to those of the Class and Defendants do not have any defenses unique to Plaintiff.

305.   Plaintiff's lead attorney (James C. Vlahakis) is an experienced consumer class action litigator who has defended over a hundred consumer-based claims.

306.   Mr. Vlahakis has defended TCPA class actions since 1998.

307.   Mr. Vlahakis has litigated more than four dozen TCPA based putative class actions.

308.   In conjunction with counsel for the class members, Mr. Vlahakis obtained Court approval of TCPA class actions such as *In Re Capital One Telephone Consumer Protection Act Litigation*, 2012-cv-10064 (N.D. Ill.) ($75 million dollar ATDS based settlement), *Prater v. Medicredit, Inc.*, 2014-cv-0159 ($6.3 million dollar ATDS wrong

party settlement) and *INSPE Associates v. CSL Biotherapies, Inc.* (N.D. Ill.) ($3.5 million fax based settlement).

309.    For example, as a former defense attorney, Mr. Vlahakis has successfully defeated a TCPA based class certification motion in *Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92 (N.D. Ill. Mar. 28, 2013), reconsideration denied, 2013 U.S. Dist. LEXIS 105352 (N.D. Ill. July 29, 2013).

310.    Additionally, as a former defense attorney, Mr. Vlahakis decertified a previously certified TCPA class action in *Pesce v. First Credit Services, Inc.*, 2012 U.S. Dist. LEXIS 188745 (N.D. Ill. June 6, 2012).

311.    Additionally, Mr. Vlahakis (as a former consumer class action defense attorney) has gained court approval of numerous FDCPA class actions.

312.    As a former consumer class action defense attorney, Mr. Vlahakis has knowledge which will assist him in advocating for Plaintiff and the putative class members. Additionally, Mr. Vlahakis has successfully ascertained the identities of putative class members individually and in conjunction with industry experts.

313.    Further, Mr. Vlahakis has filed for declaratory relief before the Federal Communications Commission.

314.    FRCP 23(b)(2) provides that injunctive and declaratory relief are proper where "the party opposing the class has acted or refused to act on grounds that apply generally to the class."

315.    Here, the above violations apply generally to the proposed classes.

316.    For the above reasons, this Court should declare Defendants' misconduct unlawful and enjoin Defendants from further violating the law.

## IX.    CAUSES OF ACTION

**Count I – Individual Claim**
**Violations of the Telephone Consumer Protection Act**
**For Autodialed and/or Predictively Dialed Calls Without Consent**

317.    Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

318.    Alarm.com, Nortek and/or one or more of the John Doe Defendants, violated the TCPA by placing more than two dozen calls to Plaintiff's cellular phone using an ATDS or a predictive dialer without his consent.

319.    Alarm.com, Nortek and/or one or more of the John Doe Defendants, violated the TCPA because Plaintiff did not provide them with his cellular telephone number.

320.    Alarm.com, Nortek and/or one or more of the John Doe Defendants, violated the TCPA because Plaintiff did not provide Alarm.com or any of the John Doe Defendants consent to call his cellular telephone with and ATDS or a predictive dialer.

321.    Alarm.com, Nortek and/or one or more of the John Doe Defendants, violated the TCPA by placing more than two dozen calls to Plaintiff's cellular phone using an ATDS or a predictive dialer after he told a representative to stop calling him.

322.    As set forth above, Plaintiff was harmed by Defendants' auto-dialed calls to his cellular phone.

323.    Defendants knew its calls to Plaintiff's cellular telephone were in violation of the TCPA, yet continued to employ them in an attempt to increase profits at Plaintiff's expense.

324.    Defendants knew its calls to Plaintiff's cellular telephone were in violation of the TCPA, yet continued to employ them in an attempt profits at the class members' expense.

325.    Defendants, through their agents, representatives and/or employees acting within the scope of their authority violated 47 U.S.C. §227(b)(1)(A)(iii).

326.    Pursuant to 47 U.S.C. §227(b)(3)(B), Alarm.com is liable to Plaintiff in an amount of $500 per offending call.

WHEREFORE, Plaintiff requests that this Honorable Court:

a.    Declare Defendants' phone calls to Plaintiff to be violations of the TCPA;

b.    Award Plaintiff $500 for each offending phone call pursuant to 47 U.S.C. § 227(b)(3)(B); and

c.    Enjoin Defendants from violating the TCPA in the future.

**Count II – Class Action Claim**
**Violations of the Telephone Consumer Protection Act**
**For Autodialed and/or Predictively Dialed Calls Without Consent**

327.    Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

328.    Alarm.com, Nortek and/or or more of the John Doe Defendants, violated the TCPA as set forth above.

329.    Alarm.com, by and through one or more of the John Doe Defendants, called more than forty persons with an ATDS or a predictive dialer after these persons told a representative to stop calling.

330.    The proposed class members were harmed in an identical manner.

331.    Defendants knew its calls to Plaintiff's cellular telephone were in violation of the TCPA yet continued to employ them in an attempt to increase profits at Plaintiff's expense.

332.    Defendants knew its calls to Plaintiff's cellular telephone were in violation of the TCPA yet continued to employ them in an attempt profits at the class members' expense.

333.   The types of calls placed to Plaintiff's cellular telephone are representative of a pattern and practice of misconduct that Defendants applied across the country.

334.   The proposed class can be defined as:

All persons in the United States (a) whose cellular telephone number were called by Alarm.com and/or Nortek (b) within four years of the filing of this civil action (c) where the calls were made by an automatic telephone dialing system, predictive dialer or some other technology that has been declared unlawful by the FCC.

335.   Excluded from this propose class are any persons who were called by Alliance Security on behalf of Alarm.com.

336.   Because Defendants bear the burden of proof on whether they had consent to call Plaintiff and the proposed class members, the above proposed class definition does not contain the reference to whether Defendants had consent to call the cellular numbers in the manner described in the above paragraphs.

337.   Further, because Defendants the burden of proof on whether they had consent to call Plaintiff and the proposed class members, the above proposed definition is not defined to reference revocation of consent.

338.   Alarm.com and/or Nortek, through its agents, representatives and/or employees acting within the scope of their authority violated 47 U.S.C. §227(b)(1)(A)(iii).

339.   Pursuant to 47 U.S.C. §227(b)(3)(B), Defendants liable to Plaintiff and the proposed class members for a minimum of $500 per offending call.

WHEREFORE, Plaintiff requests that this Honorable Court:

a.   Declare Defendants' phone calls to Plaintiff to be violations of the TCPA;

b.   Declare Defendants' phone calls to similarly situated class members to be violations of the TCPA;

c.   Award Plaintiff and class members damages of at least $500 and up to $1,500 for each offending phone call pursuant to 47 U.S.C. § 227(b)(3)(B); and

d. Enjoin Defendants from violating the TCPA.

### Count III – Individual Claim
### Violations of the Telephone Consumer Protection Act
### for Pre-Recorded Messages Without Consent

340. Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

341. Alarm.com, by and through one or more of the John Doe Defendants, violated the TCPA by placing the subject calls to Plaintiff's cellular phone using an ATDS or a predictive dialer without his consent.

342. Alarm.com, by and through one or more of the John Doe Defendants, violated the TCPA because Plaintiff did not provide Alarm.com or any of the John Doe Defendants consent to call his cellular telephone.

343. Alarm.com, by and through one or more of the John Doe Defendants, violated the TCPA because Plaintiff did not provide Alarm.com or any of the John Doe Defendants consent to call his cellular telephone with an ATDS or a predictive dialer.

344. Alarm.com, by and through one or more of the John Doe Defendants, violated the TCPA by placing the subject calls to Plaintiff's cellular phone using an ATDS or a predictive dialer after he told a representative to stop calling him.

345. As set forth above, Plaintiff was harmed by Defendants' auto-dialed calls to his cellular phone.

346. Alarm.com and the John Doe Defendants knew its calls to Plaintiff's cellular telephone were in violation of the TCPA yet continued to employ them in an attempt to increase profits at Plaintiff's expense.

347. Alarm.com and the John Doe Defendants knew its calls to Plaintiff's cellular telephone were in violation of the TCPA yet continued to employ them in an attempt profits at the class members' expense.

348. Alarm.com, through its agents, representatives and/or employees acting within the scope of their authority violated 47 U.S.C. §227(b)(1)(A)(iii).

349. Pursuant to 47 U.S.C. §227(b)(3)(C), Alarm.com's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to treble the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. §227(b)(3)(C).

WHEREFORE, Plaintiff requests that this Honorable Court:

a.      Declare Alarm.com's phone calls to Plaintiff to be violations of the TCPA;

b.      Declare Alarm.com's phone calls to similarly situated class members to be violations of the TCPA;

c.      Award Plaintiff $1,500 per offending phone call pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and

d.      Enjoin Defendants from violating the TCPA.

### Count IV – Class Action Claim
### Violations of the Telephone Consumer Protection Act
### for Pre-Recorded Messages Without Consent

350. Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

351. Defendants violated the TCPA by placing the calls to more than forty persons using pre-recorded messages without their consent.

352. Defendants, called more than forty persons with pre-recorded messages after these persons told a representative to stop calling.

353. The proposed class members were harmed in an identical manner.

354. Defendants knew that their pre-recorded messages were in violation of the TCPA yet continued to employ them in an attempt to increase profits at the expense and frustration of class members.

355.    Defendants knew that their pre-recorded messages were in violation of the TCPA yet continued to employ them in an attempt profits at the class members' expense.

356.    The sending of pre-recorded messages to Plaintiff's cellular telephone are representative of a pattern and practice of misconduct that Defendants applied across the country to other consumers.

357.    The proposed class can be defined as:

All persons in the United States (a) whose cellular telephone number were called by Alarm.com and/or Nortek (b) within four years of the filing of this civil action (c) where Alarm.com and/or Nortek placed called that used pre-recorded messages.

358.    Excluded from this propose class are any persons who were called by Alliance Security on behalf of Alarm.com.

359.    Because Defendants bears the burden of proof on whether they had consent to call Plaintiff and the proposed class members, the above proposed class definition does not contain the reference to whether had  had consent to use pre-recorded messages.

360.    Further, because Defendants bears the burden of proof on whether they had consent to call Plaintiff and the proposed class members, the above proposed definition is not defined to reference revocation of consent.

361.    Alarm.com, through its agents, representatives and/or employees acting within the scope of their authority violated 47 U.S.C. §227(b)(1)(A)(iii).

WHEREFORE, Plaintiff requests that this Honorable Court:

a.    Declare Alarm.com's phone calls to Plaintiff to be violations of the TCPA;

b.    Declare Alarm.com's phone calls to similarly situated class members to be violations of the TCPA;

c.    Award Plaintiff and class members damages of $500 to $1,500 per offending phone call pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and

d.    Enjoin Defendants from violating the TCPA.

**Count V**
**Class Based Violations of the**
**Telemarketing and Consumer Fraud and Abuse Prevention Act**
<u>**For Fraudulent, Harassing, Illegal and Abusive Telemarketing Calls**</u>

362.    Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

363.    As set forth above, Alarm.com, Nortek and one or more of the John Doe Defendants violated one or more provisions of the TCFAPA.

364.    As set forth above, Plaintiff and putative class members were harassed and harmed by Defendants' unlawful calls to their cellular phones.

365.    As set forth above, Alarm.com, Nortek and one or more of the John Doe Defendants called more than forty persons in violation of the TCFAPA.

366.    The proposed class can be defined as:  All persons in the United States (a) who were contacted by Defendants (b) within three years of the filing of this civil action (c) where the nature of the Defendants' telephone contacts violated one or more provision of the TCFAPA.

367.    Plaintiff reserves the right to amend the class definition to include subclasses which will more narrowly focus on particularized violations.

WHEREFORE, Plaintiff requests that this Honorable Court:

a.    Declare that Defendants violated the TCFAPA;

b.    Award appropriate damages resulting from each violation of the TCFAPA;

c.    Award reasonable attorney's fees and costs;

d.    Enjoin Defendants from violating the TCFAPA.

**JURY TRIAL DEMANDED**

Plaintiff hereby demand a jury trial on all claims that are subject to a jury trial.


Plaintiff NICK FISHER individually
and on behalf of all others similarly situated,

By: ___/s/James Vlahakis

James Vlahakis (lead counsel)
Joseph S. Davidson
Omar T. Sulaiman
SULAIMAN LAW GROUP, LTD.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
(630) 581-5456 telephone
jvlahakis@sulaimanlaw.com
jdavidson@sulaimanlaw.com
osulaiman@sulaimanlaw.com